**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MOHAMMED SANOGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNIVERSITY OF DELAWARE, a Delaware | ) |
| corporation, LIEUTENANT ANTHONY | ) |
| BATTLE, in his individual capacity, and | ) |
| MASTER POLICE OFFICER VALERIE | ) |
| BATTLES, | ) |
| | ) |
| Defendants. | ) |

C.A. No. _____

JURY TRIAL DEMANDED

## <u>COMPLAINT</u>

1.      On June 15, 2023, another innocent young black man was harassed, forcibly detained, and arrested by the police in America.  Fortunately for this young man, he lived to tell the tale.  Many others were not as fortunate.

### The Parties and Jurisdiction

2.      Plaintiff Mohammed Sanogo ("Plaintiff" or "Mohammed"), an 18-year-old black male, is a resident of New Castle County, Delaware.  He is currently enrolled in and attending the University of Maryland with plans to study aerospace engineering.

3.      Defendant the University of Delaware ("UD") is a corporation created under the laws of the State of Delaware.  Pursuant to the laws of Delaware, UD may create a police department whose officers are law enforcement officers of the State of Delaware.

4.      Defendant Lieutenant Anthony Battle ("Lt. Battle") is a male who was employed by the University of Delaware in June 2023 as a police officer.  At all times relevant, he was acting within the scope and course of his employment and under the color of state law.

1

5.     Defendant Master Police Officer Valerie Battles ("Officer Battles") is a female who was employed by the University of Delaware in June 2023 as a police officer.  At all times relevant, she was acting within the scope and course of her employment and under the color of state law.

### Jurisdiction and Venue

6.     This is a civil action for damages arising under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

7.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     Personal jurisdiction is proper since all parties reside in the District, conduct business in the District, and the unlawful actions giving rise to the claim took place within this District.

9.     Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

### June 15, 2023

10.     June 15, 2023, was supposed to be a day of celebration for the Sanogo family. It was Mohammed's high school graduation. Mohammed's father, Daouda, had flown from Abidjan in Côte d'Ivoire to Delaware for the occasion. Mohammed spent the day preparing with his friends, driving around procuring items like lights for a graduation party and flowers for a friend's mother. He took his time getting ready but made sure to leave early to take pictures with his family. At the ceremony, Mohammed received not only his diploma but certificates for being on the honor roll and graduating with a GPA higher than a 4.0.

11.     After the graduation ceremony, he went outside to take pictures with friends. In one joyous moment, a group of young men from each of the three high schools graduating decided to

raise up one of their friends on their shoulders in turn. Mohammed says he doesn't know why, but he was selected by the group of twenty-some boys to be hoisted in the air, flowers in hand, wearing a brilliant smile.

**Mohammed is Harassed, Forcibly Detained, and Arrested by UDPD Officers**

12.     Mohammed graduated from Newark High School. The graduation ceremony was held at the Bob Carpenter Center in Newark, Delaware.

13.     The Bob Carpenter Center and its parking lot are under the jurisdiction of UD and its police force. Defendants Lt. Battle and Officer Battles (collectively, the "Officers") were in the Bob Carpenter Center parking lot the night of Mohammed' graduation ceremony.

14.     In the parking lot following the graduation ceremony, Mohammed, a Muslim, and some of his Muslim friends took a moment to express gratitude by saying a Muslim prayer.

15.     Around the same time, the Officers saw a vehicle driving around the parking lot with someone hanging out of the passenger side window. This was not Mohammed's vehicle, and Mohammed was not involved in this incident. But this vehicle pulled up and stopped near Mohammed's vehicle in the parking lot.

16.     Within a few minutes, the Officers approached the young men. As the Officers approached the vehicles, Officer Battles said to Lt. Battle, "Do you want anybody or do you want them?"

17.     Officer Battles approached the driver's side of the vehicle that had been driving with someone hanging out of the passenger side window. Officer Battles told the occupants of that vehicle, "Guys, you can't be hanging out of the cars and shit, okay? Go. Go. Go." The occupants of that vehicle told Officer Battles to have a nice evening and drove away.

18.     Simultaneously, Lt. Battle approached Mohammed's vehicle and told them to leave.  Mohammed had to make a left-handed U-turn to get out of the parking space, around a curb, and onto the drive that led out of the parking lot to South College Avenue (the "Exit Road").  As he started moving and without his intention for them to do so, the back wheels on Mohammad's spun as the vehicle started moving.  Lt. Battle was standing nearby but was in no danger of being struck by Mohammed's vehicle.

19.     After Mohammed was out of the parking lot and onto the Exit Road, Lt. Battle and Officer Battles casually walked toward the intersection of the Exit Road and South College Avenue.

20.     Mohammed's vehicle was stopped on the Exit Road pursuant to the stoplight that governs the Exit Road's intersection with South College Avenue.  In front of Mohammed at the intersection was a truck belonging to the Delaware Department of Transportation ("Del DOT").  While he was stopped at the traffic light, another truck belonging to Del DOT pulled in behind Mohammed.

21.     When the Del DOT truck pulled behind Mohammed at the stop light, Lt. Battle increased his pace and started to run.  Officer Battles said, "Take them out?" or "Take them now?".  She began to run alongside Lt. Battle.  They ran toward the intersection of the Exit Road and South College Avenue.

22.     Lt. Battle approached the driver's side of Mohammed's vehicle while Officer Battles approached the passenger side of Mohammed's vehicle. The Officers yelled at Mohammed and his passengers to exit the vehicle.  Mohammed asked why he was being told to get out of his vehicle.  Lt. Battle gave him no reason and continued to yell at him to get out of the vehicle.

4

23.     Ultimately, Mohammed was pulled from his vehicle, lifted off the ground, and slammed onto the median by his vehicle.  Mohammed was begging with the Officers, yelling, "Please, please, please."  Terrified by the inexplicable actions of the Officers slamming him to the ground, Mohammed screamed.  Mohammed, who suffers from asthma, was trying to tell the Officers he could not breathe.  Disregarding his pleas for help, and, as police officers often do when using excessive force on an arrestee, the Officers yelled, "stop resisting."  Mohammed replied he was not resisting.  At one point while he was being held down by the police, Mohammed asked if he could please call his parents.  At another point, he yelled, "please help me!"  Finally, while Mohammed was on the ground, Officer Battles threw her knee into Mohammed.

24.     An unknown UDPD officer arrived at the scene and ordered Mohammed's passengers back into the vehicle.  One of the passengers told this officer that they had been praying.  This officer responded, "Well, he was driving fast."  Officer Battles approached this officer and said he, referring to Mohammed, "spun wheels out of here after we told him to get out."

25.     At some point, Mohammed was handcuffed behind his back.  While Mohammed was sitting on the curb, Mohammed asked for his telephone.  A police officer told him to sit down and shut his mouth.  Officer Battles told another officer "we gave them a chance to leave, and he spun wheels."

26.     Mohammed was taken to the side of a police SUV.  He continued to ask for his phone so he could call his parents.  The Officers kept telling him to calm down and quit resisting. He tried to explain that he had asthma.  As they were getting ready to put Mohammed in the SUV, he asked if they were taking him to jail.  Lt. Battle said, "Yep."  Still terrified, Mohammed asked if his brother could come with him, if they could open the window, and if he could call his parents. Suddenly, Lt. Battle said, "get in the car" and pushed Mohammed backward, cramming him into

the SUV by his legs.  Mohammed said he was "too tall," and, again, an officer said, "stop resisting."

### Mohammed's Criminal Charges are Dismissed

27.     Mohammed was arrested by the Officers and charged with Resisting Arrest and Reckless Driving.  Ultimately, the charges against Mohammed were resolved in his favor and dismissed by *Nolle Prosequi* on or about July 27, 2023.

### Mohammed's Damages

28.     As a result of the illegal and unconstitutional actions of the Defendants, Mohammed suffered the following damages:

a.   Terror, anxiety, humiliation, and emotional distress;

b.   Lack of trust in the police; and

c.   Deprivation of his rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

### COUNT I – EXCESSIVE FORCE

### (Against Defendants Lt. Battle and Officer Battles)

29.     Plaintiff incorporates all of the foregoing allegations by reference into this Count as if they are expressly stated in this Count.

30.     Lt. Battle engaged in force that was excessive given the totality of the circumstances when he, at a minimum:

a.   Pulled Mohammed out of his car;

b.   Lifted Mohammed off the ground and slammed him onto the ground;

c.   Held Mohammed on the ground; and

d.   Crammed Mohammed by his legs into the police SUV.

31.     Officer Battles engaged in force that was excessive given the totality of the circumstances when she, at a minimum:

a.   Lifted Mohammed off the ground and slammed him onto the ground; and

b.   Held Mohammed on the ground.

32.     As a result of the excessive force by Lt. Battle and Officer Battles, Mohammed suffered the damages identified in Paragraph 28.

33.     The right to be free of excessive force is grounded in the Fourth Amendment to the United States Constitution as secured by 42 U.S.C. § 1983. Defendants Lt. Battle and Officer Battles knowingly, intentionally, and/or recklessly violated Mohammed's right to be free of excessive force under the Fourth Amendment to the United States Constitution, which rights were well established by June 2023.

## COUNT II – MALICIOUS PROSECUTION

### (Against Defendants Lt. Battle and Officer Battles)

34.     Plaintiff incorporates all of the foregoing allegations by reference into this Count as if they are expressly stated in this Count.

35.     Lt. Battle and Officer Battles' encounter with Mohammed was not based upon probable cause.  There was no warrant for his arrest.  Mohammed was praying.  Mohammed was not driving the vehicle with someone hanging out of the passenger side.  Mohammed was not engaged in reckless driving.

36.     Lt. Battle's and/or Officer Battles' motive in arresting Mohammed was not to bring him to justice.  During their initial walk to Mohammed's car – before they even came up to Mohammed's car, which they knew was not the one with the person hanging out of it – Officer Battles' asked if Lt. Battled "wanted" them.  Again, before they walked up to Mohammed's vehicle

at the intersection of the Exit Road Drive and South College Avenue, Officer Battles said "take them out" or "take them now".

37.     The prosecution of the charges against Mohammed were dismissed in his favor through *Nolle Prosequi*.

38.     As a result of the malicious prosecution by Lt. Battle and Officer Battles, Mohammed suffered the damages identified in Paragraph 28.

39.     The right to be free of malicious prosecution is grounded in the Fourth Amendment to the United States Constitution as secured by 42 U.S.C. § 1983. Defendants Lt. Battle and Officer Battles knowingly, intentionally, and/or recklessly violated Mohammed's right to be free of malicious prosecution under the Fourth Amendment to the United States Constitution, which rights were well established by June 2023.

## COUNT III – ASSAULT

### (Against Defendant Lt. Battle)

40.     Plaintiff incorporates all of the foregoing allegations by reference into this Count as if they are expressly stated in this Count.

41.     At a minimum, when Lt. Battle approached Mohammed's car window while Mohammed was stopped at the traffic light, and, when he demanded Mohammed get out of the vehicle without any explanation, he put Mohammed in reasonable apprehension of his safety.

42.     Mohammed did nothing to explicitly or implicitly consent to the assault by Lt. Battle.

43.     As a result of the assault by Lt. Battle, Mohammed suffered the damages identified in Paragraph 28.

## COUNT IV – BATTERY

**(Against Defendants Lt. Battle and Officer Battles)**

44.    Plaintiff incorporates all of the foregoing allegations by reference into this Count as if they are expressly stated in this Count.

45.    At a minimum, Lt. Battle and Officer Battles touched Mohammed without his consent when they picked Mohammed off the ground and slammed him onto the ground, when they held him on the ground, and when Officer Battles threw her knee into Mohammed while he was on the ground.

46.    Mohammed did nothing to explicitly or implicitly consent to the battery by the Officers.

47.    As a result of the battery by the Officers, Mohammed suffered the damages identified in Paragraph 28.

## COUNT V – *RESPONDEAT SUPERIOR*

**(Against Defendant University of Delaware)**

48.    Plaintiff incorporates all of the foregoing allegations by reference into this Count as if they are expressly stated in this Count.

49.    At all times relevant, Lt. Battle and Officer Battles were employed by UD.

50.    At all times relevant, Lt. Battle and Officer Battles were acting within the course and scope of their employment with UD.

51.    At all times relevant, Lt. Battle and Officer Battles were taking actions that were motivated to serve UD's interests.

52.    Through the doctrine of *respondeat superior*, UD is responsible for the torts committed by Lt. Battle and Officer Battles (i.e., Counts III and IV).

53.     As a result of the torts of the of the Officers, Mohammed suffered the damages identified in Paragraph 28.

WHEREFORE Plaintiff Mohammed Sanogo respectfully requests this Court:

A.  Enter judgment in favor and jointly and severally against the University of Delaware, Lieutenant Anthony Battle, and Master Police Officer Valerie Battles;

B.  Award him special damages as he can prove;

C.  Award him compensatory damages as he can prove;

D.  Award him punitive damages;

E.  Award him costs and attorneys' fees for prosecuting this action;

F.  Award him pre- and post-judgment interest; and

G.  Grant such other relief as the Court deems proper.

**JACOBS & CRUMPLAR, P.A.**

 /s/ Patrick C. Gallagher
Patrick C. Gallagher, Esq. (DE Bar 5170)
10 Corporate Circle, Suite 301
New Castle, DE  19720
(t) (302) 656-5445
(f) (302) 656-5875
DATE:  June 25, 2024                    *Attorneys for Plaintiff*