IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MOHAMMED SANOGO,

    Plaintiff,

v.

UNIVERSITY OF DELAWARE,
LIEUTENANT ANTHONY BATTLE, and
MASTER POLICE OFFICER VALERIE
BATTLES,

    Defendants.

Civil Action No. 24-00750-RGA

MEMORANDUM OPINION

Patrick Christopher Gallagher, JACOBS & CRUMPLAR, P.A., New Castle, DE,

    Attorney for Plaintiff.

James Darlington Taylor, Jr., Juliana G. Clifton, Marisa R. De Feo, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE,

    Attorneys for Defendants.

May 16, 2025

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' motion to dismiss Plaintiff's complaint. (D.I. 9). I have considered the parties' briefing. (D.I. 10, 12, 13). For the reasons set forth below, this motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Mohammed Sanogo is a college student and resident of New Castle County, Delaware. (D.I. 1 at 1 ¶ 2). Defendants Lieutenant Anthony Battle and Master Police Officer Valerie Battles were employed as police officers by Defendant University of Delaware in June 2023 when the events giving rise to this case took place. (*Id.* 1 at 1–2 ¶¶ 4–5).

Sanogo, then eighteen years old (D.I. 10-1 at 4 of 6), graduated from Newark High School on June 15, 2023; the graduation was held at the Bob Carpenter Center in Newark, Delaware (D.I. 1 at 2–3 ¶¶ 10, 12). The Bob Carpenter Center is under the jurisdiction of the University of Delaware and its police force. (*Id.* at 3 ¶ 13). After the ceremony, Sanogo and his friends remained in the parking lot of the Bob Carpenter Center in or around a parked vehicle and "took a moment to express gratitude by saying a Muslim prayer." (*Id.* at 3 ¶¶ 14–15). At this time, a different vehicle was driving around the parking lot with a passenger hanging out of the passenger-side window. (*Id.* at 3 ¶ 15). Officer Battles and Lieutenant Battle, who were on foot, approached both vehicles and asked the occupants to leave the parking lot. (*Id.* at 3–4 ¶¶ 17, 18). Both Sanogo and the driver of the other vehicle complied. (*Id.*).

As Sanogo made a U-turn around a curb to leave the parking lot, the back wheels of his vehicle "spun." (*Id.* at 4 ¶ 18). Lieutenant Battle was nearby, but "in no danger of being struck by [Sanogo's] vehicle." (*Id.*) Once outside the parking lot, Sanogo stopped at a traffic light between two trucks. (*Id.* at 4 ¶ 20). Lieutenant Battle approached the driver's side of Sanogo's

2

vehicle and Officer Battles approached the passenger side. (*Id.* at 4 ¶ 22). Lieutenant Battle yelled at Sanogo and his passengers to exit the vehicle. (*Id.*). Sanogo asked the officer Defendants for a reason, but Defendants provided no explanation and continued yelling. (*Id.*).

Lieutenant Battle then "pulled" Sanogo from his vehicle, "lifted [him] off the ground, and slammed [him] onto the median by his vehicle." (*Id.* at 5, 6 ¶¶ 23, 30). Sanogo suffers from asthma and attempted to tell Defendants he could not breathe. (*Id.* at 5 ¶ 23). Defendants told him to "stop resisting." (*Id.*). Officer Battles "threw her knee" into Sanogo. (*Id.*). At some point, Sanogo was handcuffed. (*Id.* at 5 ¶ 25). After Lieutenant Battle told Sanogo he would be taken to jail, Sanogo "asked if his brother could come with him, if they could open a window, and if he could call his parents." (*Id.* at 5 ¶ 26). Lieutenant Battle then told Sanogo to "get in the car" and "cramm[ed]" him into Defendants' police SUV "by his legs." (*Id.* at 5–6 ¶ 26). Sanogo stated that he was "too tall"[1] and an officer responded, "stop resisting." (*Id.*).

Sanogo was arrested by Defendants and charged with Resisting Arrest and Reckless Driving. (*Id.* at 6 ¶ 27). These charges were dismissed by the filing of a *Nolle Prosequi* "on or about" July 27, 2023. (*Id.*).

Sanogo filed the complaint in this case on June 25, 2024. It alleges two federal claims and three state law claims. The Court has jurisdiction of the two federal claims pursuant to 42 U.S.C. § 1983, and supplemental jurisdiction over the state law claims. (D.I. 1 at 2 ¶ 6). Specifically, Sanogo's complaint alleges claims of excessive force in violation of the Fourth and Fourteenth Amendments (Count I) and malicious prosecution in violation of the same amendments (Count II) against Lieutenant Battle and Officer Battles; assault under Delaware law

---

[1] According to Officer Battles' affidavit, Sanogo was 6'10" and weighed 160 pounds. (D.I. 10-1 at 4 of 6).

(Count III) against Lieutenant Battle; battery under Delaware law (Count IV) against Lieutenant Battle and Officer Battles; and liability for the assault and battery claims under *respondeat superior* against Defendant University of Delaware (Count V). (*Id.* at 6–10 ¶¶ 29–53).

Defendants filed this motion to dismiss Sanogo's complaint for failure to state a claim. (D.I. 9).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the

4

complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

#### A. Consideration of Extrinsic Evidence

Defendants attached the warrant for Sanogo's arrest to their opening brief. (D.I. 10-1). The document includes a recitation of the charges against Sanogo and Officer Battles' affidavit of probable cause. (*Id.*).

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Courts may also consider a document "integral to" a complaint, whether or not the complaint explicitly cites the document, as long as the plaintiff's claims are "based" on the document. *Id.* Affidavits of probable cause are "arguably public records." *Kowlesar v. City of Newark*, 2022 WL 17751377, at *5 (D.N.J. Dec. 19, 2022).

However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Likewise, a public record "may be considered 'not for the truth of its contents but rather as evidence of the information provided [that was relevant to the

dispute].'" *Id.* (alteration in original) (quoting *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256, 273 n.11 (3d Cir. 2007)).

I find that I may consider the affidavit of probable cause as a public record and it is certainly integral to at least the claim for malicious prosecution. But to the extent that the facts alleged in the complaint differ from the facts in the affidavit, I take the facts in the complaint as true and view them in the light most favorable to the Plaintiff.

### B. Excessive Force

To state a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendant, "acting under color of state law, deprived [the plaintiff] of a right secured by the Constitution or the laws of the United States." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted).

When a law enforcement official performs an investigatory stop or arrest, the official performs a "seizure" under the Fourth Amendment of the U.S. Constitution. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Accordingly, the Supreme Court has held that claims of excessive force used during a stop or arrest are evaluated "under the Fourth Amendment's 'objective reasonableness' standard[.]" *Id.* Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (cleaned up) (citation omitted).

*Graham* instructs courts to assess a use of force through a case-by-case evaluation of the facts and circumstances, including factors such as (1) the "severity of the crime," (2) "immediate

6

threat to the safety of the officers or others," and (3) whether a suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Third Circuit has identified additional factors to consider: (4) "the possibility that the persons subject to the police action are themselves violent or dangerous," (5) "the duration of the action,"[2] (6) "whether the action takes place in the context of effecting an arrest," (7) "the possibility that the suspect may be armed," and (8) "the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).

Defendants argue that the conduct of Lieutenant Battle and Officer Battles was reasonable because Sanogo was driving recklessly, appeared to attempt to flee, and resisted arrest. (D.I. 10 at 6–7). Defendants argue that the officers "could have reasonably anticipated" Sanogo using his vehicle "as a weapon to harm themselves and others." (*Id.* at 8). Defendants note that the force used did not cause physical injuries and contend that use of force was limited "for the sole purpose of effectuating arrest." (*Id.*). Defendants also argue that force was reasonable because multiple individuals (Sanogo's friends) were present at the scene and the officers did not know "with certainty" that Plaintiff was unarmed. (*Id.* at 8–9).

---

[2] Plaintiff argues that the "duration of this entire exchange was likely measured in minutes rather than seconds" and it "was not a high stress situation where a life-and-death decision had to be made in a split second." (D.I. 12 at 12). Defendants argue that these facts are not present in the complaint and therefore may not be asserted for the first time in a brief. (D.I. 13 at 5). Defendants do not argue that the actions of the officers were reasonable based on the duration of the interaction. (*See* D.I. 10 at 6–9). For the purposes of this analysis, I will regard the factor as neutral.

I am unconvinced by Defendants' arguments. I note that questions of excessive force are very fact specific. Close cases are unsuitable for resolution on a motion to dismiss. I think this is such a close case.

According to the facts as stated in Sanogo's complaint, Sanogo and his friends graduated from high school immediately prior to this incident. Upon Defendants' first interaction with Sanogo, he and his friends were praying by a parked car in the parking lot outside the facility where their graduation took place. Sanogo was not affiliated with the person driving recklessly in the parking lot. When Defendants asked Sanogo and his friends to leave, they complied. Sanogo's tires spun when he made a hard U-turn out of the parking lot, but once he entered the roadway, he stopped at a red light between two trucks. Regarding the first *Graham* factor— "severity of the crime"—an allegation of reckless driving based upon banking a hard U-turn out of a parking lot is a relatively low-level offense. *Graham*, 490 U.S. at 396. Regarding the second *Graham* factor—"immediate threat to the safety of officers or others"—the complaint alleges that Lieutenant Battle was "in no danger of being struck" when Sanogo made the U-turn and that Sanogo stopped at a traffic light upon exiting the parking lot. *Id.*; (D.I. 1 at 4 ¶¶ 18, 20). The complaint plausibly alleges that Sanogo did not pose an immediate threat to anyone's safety.

Based on Officer Battles' affidavit of probable cause, Defendants argue that Sanogo drove recklessly and then attempted to flee because Defendants saw Sanogo's "reverse lights" illuminate and his wheels turn while stopped at the light. (D.I. 10-1 at 4 of 6). Plaintiff's complaint, however, alleges that he was stopped at the traffic light between two trucks, indicating he could not have fled. (D.I. 1 at 4 ¶ 20; D.I. 12 at 11). As Plaintiff notes, "stopping is the opposite of fleeing." (D.I. 12 at 11–12). Though a traffic light may turn green, Sanogo's

8

complaint plausibly alleges he was not "attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Theoretically, any person a police officer encounters may be "violent or dangerous" or "armed" and a vehicle may be used as a weapon. *Sharrar*, 128 F.3d at 822; *Ickes v. Grassmyer*, 704 F. App'x 190, 193 (3d Cir. 2017) (noting officers "could not rule out the possibility" that plaintiff "could attempt to use his car as a weapon"). But the circumstances alleged in Sanogo's complaint plausibly indicate that Defendants would have likely believed that Sanogo was a teenager who had just graduated high school that day, and that before being asked to leave the parking lot, he was praying and celebrating.[3] Neither party states that Defendants had any prior knowledge of Sanogo that would suggest that he or his friends were dangerous. And, as discussed above, Sanogo was stopped between two other vehicles at a traffic light, providing him with limited opportunity to use his car as a weapon.

The two factors that potentially weigh in Defendants' favor are the presence of multiple people at the scene and Sanogo's resistance to exiting his vehicle and subsequent arrest. *Sharrar*, 128 F.3d at 822; *Graham*, 490 U.S. at 396.

Sanogo alleges he had multiple "passengers" with him in his vehicle, indicating that the two officers were dealing with a minimum of three occupants.[4] (D.I. 1 at 5 ¶ 24). However, during the incident, but after Sanogo had been "slammed onto the median," at least one

---

[3] "[E]arlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones... [L]ater, 'in-the-moment' facts 'cannot be hermetically sealed off from the context in which they arose.'" *Barnes v. Felix*, No. 23-1239, slip op. at 5-6, (U.S. May 15, 2025).

[4] In his brief, Plaintiff assumes for argument's sake that the total number of occupants was four, but he notes that the complaint does not state the number of passengers. (D.I. 12 at 12). Contrary to Defendants' argument (D.I. 13 at 5), this is not an admission there were four passengers.

9

additional officer arrived. (*Id*.). Lieutenant Battle and Officer Battles did need to contend with multiple people during the incident, but neither party argues that the passengers did anything other than get out of the vehicle when told to and get back in when allowed to. (D.I. 1 at 4, 5 ¶¶ 22, 24; D.I. 13 at 5). This factor does not strongly favor Defendants.

When the officers told Sanogo to exit his vehicle, Sanogo asked for a reason instead of immediately complying. (D.I. 1 at 4 ¶ 22). Instead of providing a reason, Lieutenant Battle pulled Sanogo from his vehicle, lifted him off of the ground, and slammed him onto the median. Sanogo's complaint alleges that he screamed and was terrified. Sanogo alleges he was not resisting arrest, but "trying to tell the Officers he could not breathe" due to his asthma. (*Id*. at 5 ¶ 23). Sanogo repeatedly asked for his phone or to call his parents, but the requests were denied. (*Id*. at 5 ¶¶ 23, 25, 26). When the officers tried to "cra[m]" Sanogo into the police SUV "by his legs," Sanogo alleges that he said he was "too tall," which an officer interpreted as further resistance. (*Id*. at 5–6 ¶ 26).

I find that Sanogo plausibly alleges that Lieutenant Battle and Officer Battles acted unreasonably in light of the circumstances of the situation. Given the relative nonseverity of Sanogo's reckless driving offense and the lack of imminent danger while stopped at a traffic light, it is plausible that a reasonable officer would have told Sanogo why he was being stopped before pulling Sanogo out of the car and slamming him on the median.

Weighing the *Graham* and *Sharrar* factors and taking the facts alleged in Plaintiff's complaint as true, I find that Plaintiff has established a plausible claim that Lieutenant Battle and Officer Battles used objectively unreasonable force. *Graham*, 490 U.S. at 397. Defendants' motion to dismiss Plaintiff's claim of excessive force in violation of his Fourth Amendment rights is denied.

### C. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must allege:

(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (alteration in original) (citation omitted). Defendant argues that Plaintiff has failed to allege elements (3) and (4)—lack of probable cause and malice. (D.I. 10 at 9–10; D.I. 13 at 6–8).

#### 1. Charge of Resisting Arrest

A claim for malicious prosecution fails if there was probable cause to initiate criminal proceedings. Probable cause to make an arrest exists "if 'the facts and circumstances within [the Officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that a crime had been committed." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Id.* (alterations in original) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995)).

Sanogo was charged with the misdemeanor of resisting arrest under 11 Del. C. § 1257(b). (D.I. 10-1 at 3 of 6). Delaware law states: "A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest or detention of the person." 11 Del. C. § 1257(b). "Arrest" as used in section 1257 "refers

11

simply to the physical act of arrest and prohibits any resistance thereto regardless of whether the arrest is later determined to have been unlawful." *Ellison v. State*, 410 A.2d 519, 523 (Del. Super. Ct. 1979).

Evaluating only the facts as stated by Sanogo in his complaint, I find that the officer Defendants had probable cause to charge him with misdemeanor resisting arrest. When told to exit his vehicle, Sanogo did not immediately comply, and instead questioned why the officers were yelling at him. (D.I. 1 at 4 ¶ 22). Sanogo did not voluntarily exit his vehicle during the course of this encounter—the Officer Defendants pulled him out of the car when he did not get out on his own. (*Id.* at 5 ¶ 23). While Sanogo was being held down, he screamed and struggled and cried out for help. (*Id.*). Later, when the officer Defendants attempted to cram Sanogo into the police SUV, he said he was "too tall" to fit. (*Id.* at 5–6 ¶ 26).

Delaware law criminalizes resistance to arrest in the interest of public safety. "The purpose behind the rule that resisting even an illegal arrest constitutes a crime is to foster the effective administration of justice, to deter resistance to arrest and to provide for the safety both of peace officers and the citizens of Delaware." *Jones v. State*, 745 A.2d 856, 873 (Del. 1999). "[P]hysical resistance carries with it the threat of escalation into a tragically violent confrontation in which officers, innocent bystanders and resisting arrestees may be seriously injured or killed[.]" *Ellison*, 410 A.2d at 524.

Sanogo was not violent and did not use force during this incident. But he did, by his own admission, perform acts that a reasonable officer would interpret as resistance to being detained or arrested. Accordingly, he was charged under section 1257(b).

Because the officer Defendants had probable cause to charge Sanogo with this offense, I do not need to address the element of malice. Defendants' motion to dismiss the claim of malicious prosecution as to the charge of resisting arrest is granted.

### 2. Qualified Immunity for Reckless Driving Charge

Law enforcement officers are entitled to qualified immunity under section 1983 "unless the plaintiff shows that the officer violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 299 (3d Cir. 2024) (cleaned up) (citation omitted). "[Q]ualified immunity does not apply when the facts, taken in the light most favorable to the party claiming injury, show that the officer's conduct violated a constitutional right . . . [and] when the right at issue defined at the appropriate level of specificity was clearly established." *Id.* (cleaned up) (citations omitted).

In June 2024, the Supreme Court resolved a circuit split in relation to malicious prosecution claims. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561 (2024). Prior to *Chiaverini*, the Sixth Circuit had held that "a single valid charge in a proceeding would insulate officers from a Fourth Amendment malicious-prosecution claim relating to any other charges, no matter how baseless." *Id.* However, in *Chiaverini*, the Supreme Court held that "the presence of probable cause for one charge does not automatically defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge." *Id.*

Soon after *Chiaverini*, the Third Circuit addressed malicious prosecution and section 1983 in *Rivera-Guadelupe*. The events in *Rivera-Guadelupe* took place before June 2024—prior to the Supreme Court's resolution of the disagreement between the Courts of Appeals. The Third Circuit held, "Though *Chiaverini* has now made crystal clear that the any-crime rule does not pertain to malicious prosecution claims, that ambiguity existed in the timeframe relevant

13

here. Because the right that Rivera-Guadelupe seeks to vindicate in his malicious prosecution suit was not clearly established at the relevant time," the arresting officer was entitled to qualified immunity. *Rivera-Guadalupe*, 124 F.4th at 303.

The events at issue in Sanogo's complaint occurred in June 2023, one year prior to the Supreme Court's *Chiaverini* opinion. (D.I. 1 at 1 ¶ 1). Accordingly, at the time that these events took place, ambiguity existed as to the contours of Sanogo's Fourth Amendment rights and the "any-crime rule." *Rivera-Guadelupe*, 124 F.4th at 303. Because the right Sanogo "seeks to vindicate in his malicious prosecution suit was not clearly established at the relevant time," and because I find that there was probable cause to arrest Sanogo for resisting arrest, the officer Defendants are entitled to qualified immunity for the malicious prosecution claim as to the charge of reckless driving. *Id*. Defendants' motion to dismiss the malicious prosecution claim (Count II) is granted.

### D. Assault and Battery Claims

"To bring a successful claim for assault in Delaware, Plaintiff must prove that a specific defendant intentionally caused Plaintiff to be in fear of an immediate harmful or offensive contact, without Plaintiff's consent." *Smith v. Delaware State Police*, 2014 WL 3360173, at *6 (Del. Super. Ct. July 8, 2014). "[T]he tort of battery is the intentional, unpermitted contact upon the person of another which is harmful or offensive." *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995).

A law enforcement officer is authorized to use force when the officer is "making an arrest or assisting in making an arrest and reasonably believes that such force is immediately necessary to effect the arrest[.]" 11 Del. C. § 467(a)(1). When an arrest is made without a warrant, use of force is not justifiable unless "the defendant reasonably believes the arrest to be lawful."

*Id.* § 467(b)(3). Use of force is not justifiable unless the officer "makes known the purpose of the arrest or reasonably believes that it is otherwise known or cannot reasonably be made known to the person to be arrested[.]" *Id.* § 467(b)(1).

In support of the assault claim, Sanogo alleges he was "in reasonable apprehension of his safety" at least when "Lt. Battle approached [Sanogo's] car window while [Sanogo] was stopped at the traffic light, and, when he demanded [Sanogo] get out of the vehicle without any explanation." (D.I. 1 at 8 ¶ 41). Prior to being pulled from his vehicle, Sanogo's complaint does not allege that Lieutenant Battle made any threats of violence or took any actions that would indicate that he "intentionally caused Plaintiff to be in fear of an immediate harmful or offensive contact." *Smith*, 2014 WL 3360173, at *6.

For the battery claim, Sanogo alleges Defendants Battle and Battles "pulled" him from his vehicle, "slammed [him] onto the median," "held [him] down," and "threw [a] knee" into him, all without his consent and without telling him what he had done wrong. (D.I. 1 at 5 ¶ 23). All of these actions are intentional "harmful" or "offensive" contact performed by Defendants without Sanogo's consent. As discussed above regarding excessive force, Sanogo's complaint establishes a plausible claim that the officer Defendants used force unreasonably and unjustifiably. The plausible unreasonableness of their actions thereby removes them from the protection of 11 Del. C. § 467.

Viewing the facts in the complaint in the light most favorable to Plaintiff, I find that Sanogo has pleaded a plausible claim of battery against Defendants Battle and Battles. I find that Sanogo has not pleaded a plausible claim of assault against Defendant Battle. Defendants' motion to dismiss Sanogo's claim of battery (Count IV) is denied. Defendants' motion to

dismiss Sanogo's claim of assault (Count III) is granted. I grant Plaintiff leave to amend his complaint as to Count III.

### E. *Respondeat Superior*

Sanogo alleges that the University of Delaware ("UD") is vicariously liable for the assault and battery torts (Counts III and IV) committed by its employees, Lieutenant Battle and Officer Battles.

Under the doctrine of *respondeat superior*, "[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment." *Verrastro v. Bayhospitalists, LLC*, 208 A.3d 720, 724 (Del. 2019) (alterations in original) (citations omitted). Section 228 of the Restatement (Second) of Agency defines "scope of employment" and has been adopted as Delaware law. *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 154 (Del. 2018). "Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs within the authorized time and space limits; (c) it is activated, in part at least, by a purpose to serve the master; and (d) if force is used, the use of force is not unexpectable." *Id.* at 157 (quoting RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958)).

Sanogo's complaint alleges, "At all times relevant, Lt. Battle and Officer Battles were employed by UD," "were acting within the course and scope of their employment with UD," and "were taking actions that were motivated to serve UD's interests." (D.I. 1 at 9 ¶¶ 49–51). As Sanogo alleges actions performed by UD Police officers during a traffic stop in an area under their jurisdiction, the officer Defendants were plausibly acting within the scope of their employment. (*Id.* at 3 ¶ 13).

Defendants do not provide any viable argument to the contrary. Both cases cited by Defendants address section 1983 claims, not state tort claims. (D.I. 10 at 12). Defendants' only relevant argument is that Sanogo has failed to state a claim for assault and battery. As I find that Sanogo has pleaded a plausible claim of battery by UD employees acting within the scope of their employment, Sanogo has also pleaded a plausible claim of *respondeat superior* liability for UD.

Defendants' motion to dismiss Count V of Sanogo's complaint is denied.

## IV.   CONCLUSION

An appropriate order will issue.